Will you call the next case, please? 311-0222, Dwight Pond, Bill Pond, and Elizabeth Mark-Walton v. Heartland Illinois Food Corporation, accounted by Robert Riffle. Mr. Riffle. Thank you, Your Honor. May it please the Court, Counsel, Robert Riffle on behalf of Heartland. At the outset, I would note that this case comes before the Court in a relatively unusual procedural posture. I want to make sure the Court is aware of exactly what has transpired in the past and what is still ongoing. This is actually the second of three appeals of the same case. This case, and also a separate appeal, is now pending. That's case number 311-743. The reason it's in kind of a unique posture, this case originally was a declaratory judgment action involving whether a certain lease continued for an additional five-year period or whether it was indefinite because of the failure to have the price provision for that last five years. Summary judgment was granted to my client, Heartland, that was reversed on appeal and remanded. Subsequently, the Court entered a final, what was termed a final order granting declaratory summary judgment to the plaintiffs. At that point... You're being eloquent this time. Noted, Your Honor. It was a two-to-one decision of the Court that reversed and remanded that. Upon the entry of that order, there was nothing left to do in the trial court because the only thing pending at that time was the declaratory judgment action. So on March 2nd of 2011, this final order was entered, which was final as of that date. Subsequent to the entry of that order on March 2, 2011, a verified petition for further relief was filed for the first time seeking damages. Our research was consistent with the concept that we were required to file a notice of appeal from that order granting declaratory summary judgment for fear that we would waive any arguments inherent in that order, and so we proceeded to do so. So the case continued in the trial court. This second appeal was fully briefed, and that's what we're here on today. Then subsequently, the Court proceeded with adjudication of the verified petition for further relief. That case is now in the briefing process. Our brief, I believe, was just filed last week, and so we're actively involved in that process. There's certainly some overlap of the issues in these two appeals, and again that's why I commented I think it comes to the Court in a relatively unusual procedural posture because we're going to have three appeals arising out of the same case, and certainly that wasn't the intent of either party to not be efficient in the judicial process. But again, because of the final nature of that March 2, 2011 order and our research based on that, we felt necessary to appeal that because as the data was entered, it was indeed a final order, costs awarded, and nothing left to be done in the trial court, and our analysis was that nothing done in the trial court after that would render that to be a non-final, non-appealable order. So at any rate, I guess that's a fairly lengthy explanation of why we're here, and I just wanted to make sure the Court understood that there is indeed a third appeal that will be before this Court in the relatively near future because the briefing is already underway in that case. Turning to the substantive issues in the case, a few unusual things happened during the original appeal of this case. One, the property was sold. The property was sold before the mandate issued from this Court back to the circuit court, and so at that point in the verified petition and the motion for entry of the judgment order, the plaintiffs were still seeking a declaration that this lease was still alive for five years, even though about a year into this five-year period, they had sold the property. That wasn't brought to the attention of counsel or the Court through the appellate process, and so it was really an odd situation when it came back to the circuit court because, again, the only thing pending at that time was a declaratory judgment action asking for only one item of relief, that being a declaration that five years remained on the lease. So lo and behold, a year or so into that five-year period, the property was sold. And so when this Court issued its mandate saying end of summary judgment on the complaint, the relief that they sought really wasn't available to them at that point. Well, the letter of intent to sell was actually issued five days after the oral argument before this Court on May 19, 2001. Right, right. Five days later. Right. And so all of this was going on while the appeal was pending. Neither the Court nor the parties were, or my client was apprised of all of these things that were going on. And so when the mandate came down, the mandate was to enter an order saying that there's five years left on the lease when the plaintiffs didn't even own the property anymore. So, again, a relatively unusual set of circumstances. So our first argument on appeal is that the Circuit Court order is inconsistent with the mandate. Really, the Court was left in, I think, a difficult position. It really couldn't enter an order consistent with the mandate because by that time, we had determined and pointed out to the Circuit Court that the plaintiff didn't own the property. But our position is that the Court couldn't simply at that point just modify the mandate and fashion its own remedy, but rather had to take a new look at the case as to these intervening events, one of which the Court did take into consideration. The Court decided, okay, we're going to declare that it's valid for this shorter period, not for the period as referenced in the mandate. But, again, there was no record or no real legal right we would submit for the Court to modify the mandate and to delve into slicing up that lease at that point. And if the Court were to engage in that, then there were other things we would respectfully submit that should have been taken into consideration, such as the events surrounding the reason for the sale of the property. We subsequently determined, and there's a very established record on this that we supplied, that the property was so badly contaminated that there was a fear of vapors in the building. Mind you, this was a Burger King restaurant. It couldn't have been inhabited for a restaurant. And, in fact, the plaintiffs, the Palmers, were successful in forcing the party that was contaminating the property to buy this property at the same price that they were going to sell it to somebody else. Let me ask, is that in the record? I mean, is this evidence? Yes, Your Honor, yes. As far as the extent of the contamination and whether it was actually... I mean, this is an unusual situation, and I don't know the answer to this question, but let me just ask you, is a post-repeal maybe a 214.01 petition a proper way to attack this? I don't know. Our whole concern is we want one bite at the apple to defend this on the merits. We're concerned that the plaintiff is going to receive a windfall versus the fact of recovering rent from my client and the full value of the property from the offending, contaminating property owner. And so I guess we're in a bit of a conundrum, and I guess the environmental is more the subject of yet the next appeal. But there is a substantial record of the environmental contamination before the court in this appeal. We attached to our pleadings the letters that were sent by the plaintiff to the neighboring landowner explaining the entire situation as to the depth of the environmental problem and the vapors in the building. Except the posture of this case was that it was remanded to the trial court with a specific mandate from this court to enter judgment, right? Right. And it may very well be that our remedy is more in the third appeal when it gets to the environmental because all we're saying is at some point in time, the only thing before the court in the first case in the first appeal was the narrow legal issue of interpretation of the contract. They never sued for damages. They never gave us an opportunity to come in and defend the damages aspect of it. They came in on a very narrow issue. Here's what we think the contract says. We came in and said, no, here's what our view of the contract is. And so that's all. That's the appeal that we decided and sent back. Rule 2-1 said, yes, it's an automatic renewal even though the price term is not stated. Right. Is your whole theory here eviction, constructive eviction on that extension? We have, I guess, three or four theories that we've raised. Commercial frustration. We've alleged that they had a duty to apprise us of the environmental condition and failed in that duty. And frustration of purpose, those various theories are really what we're saying. And the windfall aspect of it. And so what we're saying is we're not trying to relitigate the question, the legal question. No, I am. Absolutely, the court has determined that but for all these other things, the interpretation is the contract is in place for five years. So I guess we really have two sets of issues. One, sort of the equitable issue that we shouldn't have to pay for a property that was badly contaminated. But two, the plaintiff really shouldn't be in a position of continuing with their declaratory judgment action of a five-year lease when, lo and behold, they've sold the property. All right. But as a matter of posture, it seems to me that the court said, okay, the lease is good. So they go back. The trial court enters a judgment and says, hey, the lease is good. So your opponent says, hey, the lease is good, pay us the rent. You say, we're not paying. And then you say, well, and then they sue you to collect the rent, and then you say you can't collect the rent, and then you raise your defenses at that point, and it's not raised pseudoconda because you lease if what you say is true, and that is because these are issues that couldn't have been raised in the prior appeal. Absolutely, Your Honor. And that is essentially what happened here, although, again, in an unusual posture because they didn't file a separate action. We got the final order on 3-2-11, the order granting declaratory judgment. Then on 3-14-11 they filed, instead of an amended complaint, instead of a new case saying you owe us the rent, they filed a verified petition for further relief. And at that point we filed our answer and our counterclaims and affirmative defenses and tried to do just that. And the court, which is the subject of Appeal Number 3, the court essentially said, look, this has already been resolved. You owe the money. The lease is in place. Law the case. You're done. We've never had our opportunity, our day in court, to litigate the environmental issues, the commercial frustration, and these. And so much more so that's the third appeal. But our biggest fear is that by not coming in at the time of the second appeal and making sure that these were at least raised to preserve those arguments that we would maybe be in a position where we had waiver. So all of those dealing with the condition of the property and all that are primarily the focus of the third. I don't know what's – and, of course, this is his third appeal. That's why this is confusing because, I don't know, did the trial court have jurisdiction to entertain a petition for further relief after you got a final – you know, there's a mandate from the trial court to do A, trial court does A, or at least what he thinks is A, and then at that point does the – is there jurisdiction to start entertaining new stuff or is that a separate action? Our view has always been that they should have filed an amendment complaint or a new case, but there is a provision in the Declaratory Judgment Act that does allow for this supplemental or further relief. And so that's essentially the tact that they took. Again, our main point is we're not seeking to relitigate anything. We're not trying to get a second bite of the apple. We want one bite of the apple where we can fully litigate our defenses on the merits to whether or not my client really owes that amount.  And I'm sure the court's well-versed in those. For those reasons, we would respectfully request that this order be reversed and that we be given the opportunity to pursue these defenses on the merits. Thank you very much. All right, thank you, Mr. Wilson. Mr. Walton, welcome back. It's been a long time. Good afternoon. May it please the court and counsel. I just want to let the court know I'm joined today by my clients, William and Phyllis Paulers, seated in the front row today. They're residents of Ottawa, so they were able to join us. Counsel, if I understood him, is essentially saying that really the issue, the reason why we're here is the damages. And I think, Justice Schmidt, you touched on exactly what the issue or what the heart of this matter is. My clients as property owners and landlords, when they lease the property, the rights of the tenant and the landlord are governed by the lease. This court ruled in the first appeal, the declaratory judgment action, that the lease, in fact, renewed for a new term of five years. That's law of the case. I mean, they did a petition for a hearing and went out. So on remand... But then the trial court, let's just get... Sure. The trial court then entered saying the lease was renewed for 18 months. Well, and you've got to understand the conundrum that the trial court was in. And I agree with counsel that because of what happened, I understand as a landlord you've got both a statutory and a common law duty to mitigate damages. You can't just sit back and say the tenant owes me rent now for five years and do nothing. What was the mandate from this court? When? What was the mandate? The mandate from this court was reversing the judgment that granted summary judgment in favor of Heartland and remanding to the circuit court with direction to enter summary judgment on a declaratory judgment action in favor of the Palmers. Why are we talking damages? Well, that's my point exactly. We shouldn't be talking damages because that's the issue. The only question is, were they entitled to recover damages? And at this procedural stage, they can't raise that issue. It's in when the judgment for damages is entered, that's when they appeal. And they raise these issues, the sale of the property, the alleged failure to disclose environmental contamination. I can understand counsel being concerned about waiving issues, but the trial court on remand entered the judgment that it was instructed to enter. Who asked the trial court to include the additional language that the lease was valid for the 18-month period or until October of whatever year? Who asked for that? Heartland. That's what I say in my brief. They invited the alleged inconsistency, and this is the catch-22 that Heartland has tried to create. On the one hand, they come in when the case is remanded and say, well, wait a minute. After the oral argument, after the appeal is decided, the Palmer sold the property. In the exercise of their legal duty, they sold the property. They immediately notified us, and because of that, now the renewal term, which was five years, has been cut off 18 months into the lease. Well, that's true. We didn't dispute that. We notified them. So the trial judge is now confronted with both parties admitting that the landlord mitigated the damages, cut off the tenant's obligation to pay rent. So the trial judge said, look, and here's the judgment. You made findings by mandate of the appellate court. The lease renewed for a renewal term of five years. However, during the pendency of the proceedings, the Palmer sold the property on October 25, 2010. So he wasn't going to say that Hartland was obligated for a full five years. He was clarifying, Judge Brandt, that Hartland's obligations ended with the sale of the property, which is exactly the Palmer's contention. Well, I mean, they sold the property. I guess in normal rental property, you've got a lease and you've got a tenant. You sell the property. It goes subject to the lease. And I guess all this is, I mean, this case has become an enigma wrapped in a riddle. Sure. But these defenses, well, gee, we don't, the defenses that he's talking about and trying to get in here about, well, gee, I don't want, I've got no use for an 18-month lease on this place. If it has any use to me at all commercially, it's for five years or something like that. Those are defenses that would raise. Only in response to the request for damages. And in terms of Your Honor's question to counsel, this is exactly the way the declaratory judgment statute contemplates things will happen. It's 2701C of the Code of Civil Procedures. It says, if following the grant of a declaratory relief, further relief is appropriate, then you can secure that relief by way of petition. So, you know, we came, we went to the trial court and said, we believe the lease renewed. Please give us a declaration. Judge said, no. We appealed. The appellate court reversed and said, yes, the lease renewed. So we go back to the trial court and say, now that we have the declaration that the lease renewed, now we're going to ask for the appropriate damages. Those damages, although the renewal term of the lease was five years, we had mitigated. So we're not entitled to the full five years. But that's a damage question. The court was going to have to answer damage questions, regardless of the circumstances. Had the property been sold or not? It was going to have to answer questions of the fair value of the property. Had the landlord, you know, taken reasonable efforts to mitigate the damages? Those damage questions are always going to have to be answered on demand. And I'm guessing, and I haven't seen that there's issues about, did the landlord basically anticipatorily breach this contract by he can't deliver what he's selling? Actually, that's not true. Because the lease, the remedy clause in the lease, what you have to understand, and this would go back to the first appeal, but Hartland moved out of the property and abandoned it. So it's dark. All right. But again, regardless, that's not an issue that we necessarily have to concern ourselves with here today. In fact, probably one of your positions we shouldn't. But just so I'm clear, did Hartland just tell them about this thing? Are you saying Hartland actually requested that the judgment be modified to say only 18 months as opposed to? I need to be clear, Judge. Hartland argued in its response to our request that the judge enter judgment in accordance with the mandate. Hartland's response was the mandate says the lease renewed for a five-year term. We've got to sail 18 months into that and a subsequent term, you know, there's a landlord. When you sell a property, you've got to either assign a lease or terminate it. And under lease, we have the right to terminate. So we did. So their argument was you can't enter the judgment that the appellate court has mandated because that judgment was for a five-year renewal term. And we now know, based on subsequent events, that the renewal term ended after 18 months. So, you know, in honesty, I went in and said, you know, he's exactly right. We've sold the property. We've mitigated the damages. But the question, the only question, is what is the tenant's obligation for that 18-month period? Well, that's not even a question here. And that's not here.  That's in once the judgment was entered that the lease renewed for a period of five years, subject to the sale of the property, then you've triggered all of those damage questions. So the lease has a clause that says, in effect, if the landlord chooses to sell the property, the lease is automatically terminated? It says that the landlord, when the tenant abandons possession of the property during the term of the lease, the landlord can come in, take possession, find a new tenant and lease it, sell the property, do whatever a property owner would do under the circumstances. And then the tenant's obligations are dependent upon what the landlord actually accomplishes. So in this situation, you know, if it was for sale or lease and a buyer emerged, the buyer couldn't get financing. And that's an issue that before I have to sit down, I do want to address, is this environmental contamination. Because, you know, again, subsequent events, discovery's been taken. And Heartland now knows that the environmental contamination was fully disclosed to Heartland by the contaminator because they were the occupant. In fact, the Palmers got a letter, and this is in the record on appeal in the third appeal, they got a letter from Heartland's counsel saying, by the way, the neighboring property owner has sent us a full phase two site assessment that shows that there's contamination. They understood it. They stayed in possession of the property. This was back in 2005. A long time ago. They've known about this environmental contamination for a long time. They stayed in possession of the property. There's no evidence of any fumes that would render the property untenable. And you'll get into that issue in the third appeal. But I felt compelled to respond to that. Yeah. Okay. So from your position, I'm assuming, just trying to wrap my brain around what we really got to do here, and that is the issue is does the trial court's order, normally a case like this, does the trial court's order comply with the mandate of this court? It does. Okay. And because? The trial judge found that the lease, in accordance with the appellate court mandate, renewed for a five-year renewal term. And all the judge did was respond to Heartland's concern that it was going to be tagged with five years of liability when, really, it should only have 18 months. The court said the parties had agreed that the property was sold on October 25, 2010, and that the lease was terminated. That's just a factual matter that both parties agreed to. Was that part of the declaratory question originally posed in that appeal? Well, certainly not, because that appeal came way before October 25, 2010. Did we direct in the mandate for the court to determine when the lease terminated? No. The mandate said simply that the lease term renewed for a period of five years. The renewal provision is enforceable and operates to extend the lease until May 23, 2014. Correct. No discussion about, and we want the court to decide, whether that lease terminated or whether the landlord mitigated damages. Nope. So are you opposed if we were to strike or vacate that additional language regarding the termination of the lease in October? I'm not opposed. It wouldn't really have any effect, because the only place that it has an effect is on the damage question, which has already been answered. And the landlord hasn't sought damages past the termination date and sale date, so it really wouldn't have any effect on the ultimate judgment that was entered. Saying that the lease expires 18 months later kind of implies that it was effective for 18 months, and we didn't direct the court to decide that. Correct. But there's a difference between expiration of the lease, which was May of 2014, and a sooner termination of the lease by the landlord in accordance with the provisions of the lease. What happened here is that the landlord exercised its right under the lease to terminate. And in fact, it was a duty. That's why this posture here is so difficult from the landlord's perspective. All the Palmers did was fulfill their legal obligation to Heartland to try to mitigate the damages. They went out, they actively listed the property, they actively tried to find a new tenant or a buyer. They did. They found a buyer. So they cut off what could have been five full years of rent liability from Heartland and made it only 18 months. And in fact, because Heartland stayed held over on the lease through December of 2009, even after the stipulated expiration date, it's really only about 10 months of rent. So no good deed goes unpunished. Here we are. But again, it's all questions of damages and you're going to, unfortunately, maybe it's you three, maybe it's other judges are going to have to deal with the same question in the third appeal. It would have been lovely if maybe there had been a motion to consolidate these, but here we are. Yes, it is what it is. I've gone way over my time. Thank you. Okay. All right. Thank you, Mr. Walton. Mr. Riffle, some rebuttal. Thank you, Your Honor. I'll try to be very brief here. Before you start, and then I'll give you whatever time to finish your talk, isn't that, okay, they say there's a lease, and then that's already been decided, and then they come back and they say, now pay us our rent, and then you say we don't owe the rent because of A, B, and C, and D. And then the trial court decides that issue, and voila, and then the disgruntled party appeals, which I guess has already happened. Right. So the real purpose of the second appeal was to avoid a waiver of certain arguments that we raised on appeal. And I want to just hit on those very, very briefly, but the plaintiffs, I think, had some duty to tell this court or someone before this got to where they did about the sale of the property. Where do you find that duty? Well, because, Your Honor, on remand, after the mandated issue, after they'd already sold the property, on January 14th, 2011, the Palmers filed their motion for entry of judgment in the circuit court, and they asked that the court enter summary judgment declaring that Hartman's obligation under the lease continue through May 23, 2014, in accordance with the appellate court's order. They're asking for essentially a windfall at that point. It wasn't them that came in and said, wait a minute, we've sold the property. They never told the appellate court. And until we came in and said, wait a minute, you're asking for rent for periods that didn't even own the property. They didn't even fess up that that was the situation. So I think they played fast and loose with the appellate court, with the circuit court, and throughout. And they've ended up with an order that I think is clearly inconsistent with this court's mandate. So where it's incumbent upon them is that they can't perpetrate a fraud on the court. They can't proceed with something that just is no longer viable. And that really is our first argument of the inconsistency. And it's the second as to standing. They're no longer a leaseholder. They're seeking a declaration of a five-year lease. At the time that they went in and asked for the judgment, they had no rights under the lease. Their lease was gone. It had been terminated. And so you've got an inconsistency between the mandate and the circuit court order. You've got a plaintiff seeking a declaration at that point, asking the court to enter an order for a period where they don't even own the property and certainly don't have a lease. And so really I think they lack standing at that point. The appeal is for the case that they have is really moot. They're asking Judge Brand and the circuit court. Well, it's not moot because they're trying to recover rent for a time they owned the property, right? Absolutely, Your Honor. Now, the fact that they might have asked for a little bit beyond that in their first thing is an issue, I guess, for the trial court. I think they absolutely had standing to pursue a cause of action, but not the cause of action they continue to pursue. They're still pursuing a declaratory judgment action that a lease is for five more years when they don't own the property. Whether they had standing to pursue the damages case, that's a whole separate thing. But to persist in the declaratory judgment action at that point after they sold the property, I think they lost standing in that their declaratory judgment action, at least as framed in the complaint, which has never been amended, was moot. They didn't amend the declaratory judgment action to say, Your Honor, because we terminated the lease, we're now seeking a declaration of a shorter period. You damaged my property, and then I sell the damaged property, and I get a reduced value for it. We're not outside of the lease situation. You get a reduced value for it. I don't own it anymore, but I can still sue you for damage to that property, can't I? And by the way, he damaged my property, I sold it, and because of the damage to it, I got half of what I would have got for it had it not been damaged. I don't disagree with that. That's not a standing problem? No, because you're pursuing your damages claim at that point. You're not seeking a declaration that relates to ongoing future obligations. Do you have any problem if we were to consolidate the second and third appeals now? No. As long as we get our one bite at the apple and a full opportunity to I really don't have any problems with that. Again, the record on the environmental, albeit substantial here, is more developed than the other appeal, and certainly we would want an opportunity to finish the briefing and argue in that case. But in the interest of judicial economy, I think it would make sense to have it all decided in one order. Well, rather than put you all on the spot, including Mr. Walton here and everybody on the spot here today, why don't you go back home and have a cup of coffee and within about a week or so decide whether you both agree to consolidating these appeals. And if you don't agree, somebody can make a motion to which somebody objects or you can do that. I don't think it's fair to ask these people about consolidation right here until you both have an opportunity to talk to your clients and see what. Say again? We can order it whether you agree or not, but before we do that or before we even think about it, let's see what you folks think about it. Maybe is a week a reasonable amount of time? More than enough time. Okay. Very well. That's very acceptable, Your Honor. Anything else? Very well. Thank you, Your Honor. Appreciate it. So you probably won't get a decision in the next seven days. We'll be waiting for you. You're looking for a motion to consolidate? What your mutual feelings are or non-mutual feelings are about consolidating these appeals so that then what you do is file, I don't know if you've briefed the other cases yet, you file supplemental briefs. This is getting to be a habit with Mr. Walden. And just file supplemental briefs, which might reduce some expense to your respective clients, and then if you all want to come back and have some, and you can still have the right to come back and argue the issues raised in your supplemental briefs if you choose to. You can proceed by agreed motion to consolidate or one party can move to consolidate. If there's a response in opposition thereto, the court will rule on motion. The court has within its power to consolidate on its own order. Yeah. I mean, we can do it whether you want us to or not, but it seems to me that let us know what you think about it the next week and then we'll say what we think about it. Basically, you're going to grant a leave to petition for consolidation. Very well. We appreciate it. Thank you very much. Okay. Okay. Well, thank you both here for your arguments today, and the matter will be taken under advisement. Before any written disposition comes out, we'll deal with the consolidation issue, and right now the court will be in brief recess.